DISTRICT COURT OF GUAM

| | |
|---|---|
| JOSEPH LAGUANA,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | CIVIL CASE NO. 22-00027<br><br>**ORDER**<br>Granting in Part Motion for Disqualification<br>of Marr Jones & Wang LLP (ECF No. 42) |

Pending before the court is a Motion for Disqualification of Marr Jones & Wang LLP (the "Motion to Disqualify"), which asks the court to sanction Defendant United Airlines, Inc. ("United") by revoking the *pro hac vice* admissions of its counsel, Ronald Tang and Richard M. Rand, and disqualifying the firm Marr Jones & Wang LLP ("Marr Jones") from further representing United. Alternatively, the Plaintiff requests the court impose some lesser penalty as may be appropriate. *See* Mot. Disqualify, ECF No. 42. Having reviewed the pertinent filings and authority, the court grants the motion in part. Marr Jones and its attorneys will not be disqualified from further representing United, and the court instead will impose a sanction of $500.00 as further discussed below.

**I.      BACKGROUND**

In this employment discrimination action, the Plaintiff alleges that United discriminated against him on the basis of his disability and alleged the following claims in the Complaint: (1) Disability Discrimination in violation of the Americans with Disabilities Act, (2) Disability Discrimination in violation of the Rehabilitation Act, (3) Disability Discrimination in violation of 22 Guam Code Ann. § 5203 and (4) Hostile Work Environment. *See* Compl., ECF No. 1.

The Plaintiff hired Garrett J. Hoe as his expert witness, and United subpoenaed Mr. Hoe for

a deposition and also subpoenaed the production of certain documents. This ultimately resulted in the Plaintiff filing three motions to quash to challenge alleged deficiencies in the subpoenas. *See* ECF Nos. 27, 28 and 31.[1]

On April 26, 2024, while the motions to quash the subpoenas directed at Mr. Hoe were still pending before the court, United's counsel Ronald Tang contacted Mr. Hoe by telephone to confirm whether Mr. Hoe had received the subpoenas and asked whether Mr. Hoe was planning to attend the scheduled deposition and/or produce the requested records. Decl. Ronald Tang at ¶¶ 5-7, ECF No. 51-1, and Suppl. Decl. Garret J. Hoe at ¶¶ 3-4, ECF No. 43. Mr. Hoe claimed that Mr. Tang "began providing legal advice . . . regarding the effect of what he called a 'Civil Summons'" [and] "informed [Mr. Hoe] that [he] should comply with the 'Civil Summons.'" *Id.* at ¶¶ 5-6. Mr. Hoe informed Mr. Tang that the Plaintiff's counsel instructed him to "hold off" until the pending motions to quash were resolved. *Id.* at ¶ 7. Mr. Hoe claims that Mr. Tang became "insistent" and kept repeating that "Joe [Razzano] is not your lawyer" when Mr. Hoe attempted to terminate the phone call. *Id.* at ¶ 8. Mr. Hoe believed that Mr. Tang was "attempting to convince [Mr. Hoe] that Mr. Razzano would sacrifice me to benefit [the] client, Mr. Laguana." *Id.* Mr. Hoe got the impression that "Mr. Tang wanted to sow distrust in Mr. Laguana's trial team." *Id.* at ¶ 9. Eventually, Mr. Hoe terminated the phone call and informed Mr. Razzano about his conversation with Mr. Tang. *Id.* at ¶¶ 10-11.

Mr. Tang version of the conversation is somewhat different. Mr. Tang asserts that he inquired whether Mr. Razzano was representing Mr. Hoe in the matter, and Mr. Hoe responded, "I am deferring to Joe." Decl. Ronald Tang at ¶ 8, ECF No. 51-1. Mr. Hoe then said "Look, I'm not trying to be rude to you, but the client pays the bills so I defer to the client." *Id.* at ¶ 9. Mr. Tang claims he then said "I understand but, to be clear, Joe does not represent you in this case, correct?" *Id.* at ¶ 10. Mr. Hoe then terminated the call. *Id.* at ¶ 11. Mr. Tang claims that when he was not "attempting to sow distrust between Mr. Hoe and Plaintiff's attorneys . . . [but] was only attempting

---

[1] The parties eventually resolved their dispute regarding the taking of Mr. Hoe's deposition. *See* Stipulation Regarding Discovery at ¶1, ECF No. 47. The motions to quash were thereafter deemed moot. *See* Order, ECF No. 48.

to obtain confirmation from Mr. Hoe concerning his production of documents and his appearance at the oral deposition." *Id.* at ¶ 12.

The Plaintiff then filed the instant motion before the court.

## II. ANALYSIS

The Plaintiff asserts that Marr Jones and its attorneys participating in this case should be disqualified, or at a minimum sanctioned, for communicating with the Plaintiff's expert Mr. Hoe while motion to quash United's subpoenas issued to Mr. Hoe were still pending before the court and knowing that said contact was not permissible under the Federal Rules of Civil Procedure.

Rule 26(b)(4) governs expert discovery and provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). Because Rule 26 provides specific guidance on how parties may obtain discovery from experts, court have interpreted Rule 26 as an implied prohibition on *ex parte* contact with an opposing party's expert and sanctioned such conduct as a violation of the applicable rules of professional responsibility. *See* ABA Comm. on Ethics & Prof. Resp., Formal Op. 93-378.

ABA Formal Opinion 93-378 states that

> [a]lthough the Model Rules do not explicitly prohibit *ex parte* contacts with an opposing party's expert witness, a lawyer who engages in such contact may violate Model Rule 3.4(c) if the matter is pending in federal court or in a jurisdiction that has adopted an expert-discovery rule patterned after Federal Rule of Civil Procedure 26(b)(4)(A).[2]

*Id.*

The Plaintiff cites to the case of *Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996). There, the *pro se* plaintiff brought suit against a mobile home manufacturer alleging that his mobile home was defective. *Id.* at 299. The plaintiff hired a metal expert, and prior to the expert's deposition, defense counsel asked the expert to "evaluate a lock which was an important piece of evidence in an unrelated case[]" and offered to compensate the expert. *Id.* at 300. After the expert's

---

[2] At the time the ABA opinion was issued, Rule 26(b)(4)(A) "set forth a two-step process that must be followed in order to obtain discovery of facts and opinions held by an adversary's expert who is expected to testify at trial: first, written interrogatories are to be served; second, if additional discovery is desired, leave of court must be obtained." *Id.* The rule was subsequently amended in 2010 to its current form.

deposition, defense counsel met separately with the expert in another room to view a videotape and photographs of the lock. *Id.* Later that afternoon, the plaintiff confronted the defense counsel after doing research on whether defense counsel's offer was proper and discovered that opposing counsel had "violated the law in making an offer" to the expert. *Id.* This led to a heated argument between defense counsel and the plaintiff, and the plaintiff ultimately fired his metal expert because the plaintiff did not know if he could still trust said expert. *Id.* The plaintiff's other expert witness then refused to testify for the plaintiff because "he did not want to be involved in a case where 'the attorneys were bothering the witnesses.'" *Id.* (brackets omitted). The plaintiff filed a motion seeking judgment against the defendant for tampering with his witness, which the trial court denied. *Id.* The plaintiff went to trial without his expert witnesses, and the trial court eventually entered judgment in the defendant's favor. *Id.* The plaintiff appealed. The Ninth Circuit ruled that by employing the plaintiff's metal expert, defense counsel "entirely circumvented the discovery rules because [defense counsel] achieved unsupervised access to plaintiff's expert." *Id.* at 302. The Ninth Circuit also stated that defense counsel's "actions had a prejudicial effect on [the plaintiff's] ability to present his case." *Id.* Two months before trial, the plaintiff "lost two experts who were critical to his lawsuit[.]" *Id.* at 303. The appellate court further found defense counsel's behavior to be "particularly disturbing" because he "took advantage of the fact that [the plaintiff] was acting *pro se*[,]" and cautioned that "attorneys must use their common sense to avoid conduct which could appear to be an improper attempt to influence a witness who is about to testify." *Id.* The Ninth Circuit stated that "[r]egardless of [defense counsel's] motive, at a minimum, the offer of employment put [the expert] in a position of having divided loyalties." *Id.* The Ninth Circuit ultimately held that the district court abused its discretion by failing to address the claim of unethical conduct in the form of witness tampering. *Id.*

In response, United argues that the facts herein "bear no resemblance to the monetary-inducement scenario in *Erickson*." Opp'n at 8, ECF No. 51. United asserts that unlike *Erickson*, the plaintiff here is not proceeding *pro se,* and United's attorney did offer any monetary inducement to Mr. Hoe that would put him in a position of having divided loyalties. *Id.* United further contends that unlike the plaintiff in *Erickson*, Mr. Hoe continues to be Plaintiff's expert witness, and the

conversation between Mr. Tang and Mr. Hoe had no negative effect on his relationship with the Plaintiff or his counsel. *Id.*

United relies on the case of *Kannan v. Apple Inc.*, No. 5:17-cv-07305-EJD, 2020 WL 3617900 (N.D. Cal. July 2, 2020). There, the plaintiff filed a motion seeking to disqualify defense counsel after defense counsel emailed the plaintiff's expert directly, without the plaintiff's consent or authorization. *Id.* at *4. The district court distinguished the facts of that case from *Erickson*, stating that defense counsel only contacted the expert witness "to ask if he would accept service of the subpoena by email[,]" and that "[t]his contact . . . fits comfortably within the type of communication discussed in *Erickson*."[3] *Id.* United asserts that like *Kannan*, Mr. Tang only called Mr. Hoe to confirm whether he received the subpoenas, whether Mr. Hoe would be appearing for his scheduled deposition, and whether Mr. Hoe would produce any documents before the deposition. Opp'n at 9, ECF No. 51. United maintains that Mr. Tang's contact with Mr. Hoe was not unethical because the federal rules permit these sort of inquiries in discovery. *Id.* at 9-10.

The court does not find United's reliance on *Kannan* persuasive. The contact by Mr. Tang was not simply to inquire into permissive avenues of discovery. Instead, Mr. Tang sought to "enforce [United's] subpoena to Mr. Hoe." Ex. A to Supp. Decl. Joseph C. Razzano (Ronald Tang email to Joseph Razzano, April 28, 2024), ECF No. 42-1. The court does not find United's assertion that it only wanted to confirm whether Mr. Hoe received the subpoenas and would comply with them to be credible, because Mr. Tang himself acknowledged that as of April 26, 2024, "Mr. Razzano had informed me verbally that he would not be producing such documents[.]" Decl. Ronald Tang at ¶3, ECF No. 51-1. This is consistent with Mr. Razzano's Declaration that asserts that when Mr. Tang "asked if [the Plaintiff] would produce Mr. Hoe's documents, [Mr. Razzano] informed him that the trial team would not be producing anything and the Mr. Hoe would not sit for United's Deposition on May 6, 2024, as he was unavailable on that date." Decl. Joseph C. Razzano at ¶ 3, ECF No. 53-1. As argued by the Plaintiff, it appears more likely that United's attorney contacted

---

[3] The *Kannan* court stated that *Erickson* "contemplated that counsel may contact opposing expert witnesses pursuant to the 'limited and controlled' process of discovery." *Id.* (quoting *Erickson* at 301-02).

Mr. Hoe to pressure him to produce the requested documents and appear at the scheduled deposition despite Mr. Razzano's instructions to Mr. Hoe the contrary.

The court has the duty and the responsibility to supervise the conduct of attorneys who appear before it. *Trust Corp v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). The court finds Mr. Tang's statements are disingenuous, and his communication with Mr. Hoe an improper attempt to sow distrust between Mr. Hoe and Mr. Razzano. Nevertheless, the court finds that a sanction of disqualification would be too harsh under these circumstances. United's tactic did not appear to have any negative effect on Mr. Hoe's loyalty to the Plaintiff. He remains the Plaintiff's expert, and his deposition was completed shortly after the instant motion was filed. Nevertheless, the Plaintiff's counsel had to expend time and resources to bring this matter to the court's attention. Accordingly, the court finds that a nominal sanction of $500 to be reasonable sanction against United and its attorneys, and the court is satisfied that this conduct will not be repeated.

## III. CONCLUSION

Based on the above discussion, the court denies the request to disqualify United's attorneys and instead grants the alternative request to sanction the improper conduct. The court orders that United pay the Plaintiff $500.00 no later than twenty-one days from the date of this Order.

IT IS SO ORDERED.



/s/ Michael J. Bordallo
   U.S. Magistrate Judge
Dated: Apr 14, 2025